# WHITE v. WINTER.

---

#### HUSBAND AND WIFE; ILLEGAL CONTRACTS.

A contract between a divorced wife, made in her behalf by her attorneys, and her former husband, who procured the divorce, which was granted on the ground of adultery, whereby it was agreed that so long as he made specified monthly payments of money to them for her no action would be taken by her or for her, looking to disturbing the decree, is illegal and void, and an action for damages for its breach is not maintainable by the surviving attorney, as trustee against

the husband, where the contract is shown to have been the result of the attorneys agreeing not to file a bill for the wife which they had prepared, to vacate the divorce decree, and in which it was alleged that the decree had been procured upon false testimony and through collusion and fraud on the part of the husband, his house-keeper, whom he wished to marry, and the alleged correspondent; that the wife was insane at the time and had been so for many years, and had been induced by the husband to make no defense to the suit. (Citing *Cronan* v. *Cronan, ante,* 343.)

No. 2996. Submitted February 8, 1917. Decided April 23, 1917.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action for breach of contract.          *Affirmed.*

The COURT in the opinion stated the facts as follows:

This appeal is from a judgment in the supreme court of the District upon a verdict for the appellee, Mahlon A. Winter, defendant below.

The suit was based upon the following agreement:

### Agreement.

This agreement entered into this 11th day of January, A. D. 1909, in duplicate, between Mahlon A. Winter, of Washington, District of Columbia, party of the first part, and William Henry White and Noel W. Barksdale, of Washington, District of Columbia, as attorneys for Erminie L. Winter of Lynchbury, Virginia, parties of the second part, witnesseth; that

Whereas, the said Mahlon A. Winter and Erminie L. Winter were divorced by a decree in Equity Cause No. 24,919 in the supreme court of the District of Columbia, passed January 14, 1905, and concerning which a difference has arisen and exists between them; and

Whereas, the parties hereto have reached an amicable adjustment in settlement and compromise of their matters of difference, they now agree as follows:

1. The said Mahlon A. Winter, for the support of Erminie L. Winter, will pay unto said William Henry White and Noel W. Barksdale, or the survivor of them, for and on her behalf, the sum of sixty dollars ($60), and a like sum of sixty dollars ($60) on the first day of February, 1909, and the sums of sixty dollars ($60) on the first day of each and every month thereafter during the lifetime of the said Erminie L. Winter, or until her remarriage, to the payment of which sums the said Mahlon A. Winter binds himself, his heirs, executors, administrators, and assigns.

2. The said William Henry White and Noel W. Barksdale, as such attorneys, agree that so long as said sums are promptly paid, no action shall be taken in the premises by the said Erminie L. Winter or her counsel against the said Mahlon A. Winter, looking either to disturbing said decree or seeking any additional sums for her maintenance or support, and they agree that at the signing hereof the mother of said Erminie L. Winter, Mary E. Tanner, and her friend, Mrs. Anna C. Pollok, shall in writing concur in and approve the terms hereof.

In witness whereof, the parties have hereunto set their hands and seals this 11th day of January, A. D. 1909.

M. A. Winter.     (Seal)

Wm. Henry White,     (Seal)

Attorney for Erminie L. Winter.

Noel W. Barksdale,     (Seal)

Attorney for Erminie L. Winter.

Witness:
     G. W. Faris.

The facts which we deem material are substantially as follows: The appellee, Mahlon A. Winter, and Erminie L. Winter were married in November, 1891, and lived together until 1904, when appellee filed a petition for divorce in the supreme court of the District, alleging infidelity and naming his own son by a former marriage, born January 14, 1888, as corespondent. No defense was made to this suit, and in January, 1905, a divorce was granted. Thereafter, in December of 1908,

counsel for Mrs. Winter notified appellee in writing that they
had been advised that the decree was procured while Mrs. Win-
ter was insane, and that they therefore had prepared and pro-
posed to file a bill to set aside the decree. They further sug-
gested that appellee have his counsel call to see them about the
matter. The result was a series of interviews between counsel.
In addition to this, appellee and his counsel went to Lynchburg,
Virginia, where his former wife then lived in straitened and
necessitous circumstances, and made an independent investiga-
tion.

The bill of complaint to which counsel for appellant referred
in his communication to appellee was exhibited to counsel for ap-
pellee during the course of the negotiations and its contents made
known to him. In the bill it was alleged that at the time of
the filing of said petition for divorce Mahlon A. Winter and
Erminie L. Winter were living in the city of Washington;
that Courtney P. Winter, the son of Mahlon A. Winter above
referred to was living with them, and that Ida B. Creel was
housekeeper; that on the date the divorce suit was filed Mrs.
Winter and Courtney P. Winter, the corespondent, were duly
served with process, and on September 30, 1904, said cores-
pondent appeared in court, when a guardian *ad litem* was ap-
pointed to answer for him; that an answer thereafter was filed
on his behalf; that some time between the 21st and the 26th
of September, 1904, appellee directed said Erminie L. Winter,
who then was living with him at his residence in this city, to
call an attorney at his office by telephone and request said at-
torney to represent her in said divorce case; that she did call
said attorney and, through fear of appellee and under his direc-
tion, she informed said attorney that she did not wish to make
any defense to said suit; that she neither answered the bill
nor introduced any testimony in said cause; that thereafter
two depositions on behalf of the complainant were filed, one
being the deposition of the petitioner and the other of Ida B.
Creel. Upon hearing, the court recommitted the cause for the
taking of further testimony, whereupon the deposition of Court-

ney P. Winter was taken and filed, and thereafter the decree of divorce was passed.

The bill further averred that the allegations of infidelity in said petition for divorce and the testimony in support thereof were false and known to be false by the parties testifying; that the said petition for divorce was filed by said Mahlon A. Winter as part of a prearrangement and understanding between him and his housekeeper that a divorce should be procured and that thereafter they should be married; that they did go through a form of marriage ceremony in the spring of 1905, after the granting of said divorce. It was further averred that said Erminie L. Winter had been of unsound mind since 1896, and that this was well-known to the said Mahlon A. Winter, Ida B. Creel, and Courtney P. Winter; that "the said parties purposely, knowingly, wilfully, and fraudulently imposed upon this court as well as upon the attorney in said suit, by failing to impart the information of said facts to the counsel in the cause and to the court;" that the attorney for the said Erminie L. Winter had not seen her before he called upon her upon the occasion above mentioned; that he then saw her for less than twenty minutes, and did not see her afterwards, and did not learn of her condition until after the decree was passed. It was prayed that the divorce decree be set aside. The proposed bill was signed and sworn to by Mary E. Tanner, mother and next friend of Mrs. Winter.

The negotiations before mentioned resulted in the contract involved, and appellee promptly made the payments called for therein until January, 1911, when he discontinued them on the ground that the signing of the contract by him was induced by duress, and that was the question submitted to and determined by the jury.

*Mr. Andrew Wilson* and *Mr. William L. Symons,* for the appellant, in their brief cited:

*Brown* v. *Pierce,* 7 Wall. 214; *Baker* v. *Morton,* 12 Wall, 150, 157; *French* v. *Shoemaker,* 14 Wall. 314, 332; *United States*

v. *Huckabee*, 16 Wall. 414; *Lonergan* v. *Buford*, 148 U. S. 581; *Radich* v. *Hutchins*, 95 U. S. 210; *United States* v. *Old Settlers*, 148 U. S. 427; *Chesebrough* v. *United States*, 192 U. S. 253; *Fulton* v. *Hood*, 34 Pa. 365; *Sulzner* v. *Cappeau-Lemley etc. Co.* 234 Pa. 162; *Union Nat. Bank* v. *Dersham*, 15 W. N. C. 541; *Motz* v. *Mitchell*, 91 Pa. 114; *Bianchi* v. *Leon*, 138 App. Div. 216, 122 N. Y. Supp. 1004; *U. S. Banking Co.* v. *Veale*, 84 Kan. 385; *Bode* v. *Jussen*, 93 Neb. 482; *Jussen* v. *Bode*, 93 Neb. 490; *Flack* v. *Nat'l Bank*, 8 Utah, 193; *Felton* v. *Gregory*, 130 Mass. 176; *De La Cuesta* v. *Ins. Co.* 9 L.R.A. 632; *Fisher* v. *Bishop*, 36 Hun, 112; *Seymour* v. *Prescott*, 69 Me. 376; *Morse* v. *Woodworth*, 155 Mass. 233; *Buck* v. *Axt*, 85 Ind. 512; *Snyder* v. *Braden*, 58 Ind. 143; *Mascolo* v. *Montesanto*, 61 Conn. 50; *Hilborn* v. *Bucknam*, 78 Me. 482; *Thorn* v. *Pinkham*, 84 Me. 101; *Parker* v. *Lancaster*, 84 Me. 512; *St. Louis etc. R. Co.* v. *Thomas*, 85 Ill. 464; *Younges* v. *Simm*, 41 Ill. App. 28; *Rendleman* v. *Rendleman*, 156 Ill. 568; *M. & C. C. of Balto.* v. *Lefferman*, 4 Gill. 425; *Harris* v. *Tyson*, 24 Pa. 347; *Stokes* v. *Anderson*, 118 Ind. 533; *Robinson* v. *Robinson*, 51 L.R.A.(N.S.) 534; *Griffin* v. *Griffin*, 130 Ga. 527; *Saxton* v. *McNair*, 71 Wis. 459; *Bolln* v. *Metcalf*, 6 Wyo. 1; *Dunham* v. *Griswold*, 100 N. Y. 224; *Clark* v. *Turnbull*, 47 N. J. L. 265; 10 Enc. Law; *Carver* v. *United States*, 111 U. S. 609; *Brown* v. *Piper*, 91 U. S. 37; *Pence* v. *Langdon*, 99 U. S. 578; *Grymes* v. *Sanders*, 93 U. S. 55; *Griswold* v. *Hazard*, 141 U. S. 295; *McLean* v. *Clapp*, 141 U. S. 429; *Hoyt* v. *Latham*, 143 U. S. 567; *Shappiro* v. *Goldberg*, 192 U. S. 242; 23 Cyc. 778; *Williams* v. *Anderson*, 9 Minn. 50; *Murray* v. *Blackledge*, 71 N. C. 492; *Lough* v. *Thornton*, 17 Minn. 253; *Ballou* v. *Harris*, 5 R. I. 419; *Slivitski* v. *Wien*, 93 Wis. 460; *Merritt* v. *Great Northern R. Co.* 81 Minn. 496; *Glennon* v. *Erie R. Co.* 180 N. Y. 562; *Meehan* v. *Great Northern R. Co.* 101 N. W. 183; *Richmire* v. *Andrews etc. Elevator Co.* 11 N. D. 453; *Casely* v. *Jamison*, 35 Wash. 478; *Baxter* v. *Cov. Mutual Life Asso.* 81 Minn. 1.

*Mr. George X. McLanahan, Mr. H. Ralph Burton,* and *Mr. James S. Easby-Smith,* for the appellee, in their brief cited:

*Adams* v. *Stringer,* 78 Ind. 175; *Atwood* v. *Jarrett,* 81 Conn. 532, 71 Atl. 569; *Baldwin* v. *Hutchinson,* 8 Ind. App. 454, 35 N. E. 711; *Beale* v. *Newton,* 1 Cr. C. C. 404; *Bowie* v. *Hume,* 13 App. D. C. 286; *Bradley* v. *Merrick,* 91 N. Y. 293; *Cribbs* v. *Sowle,* 87 Mich. 340, 347, 49 N. W. 587; *Davidson* v. *Henop,* 1 Cr. C. C. 280; *Day* v. *Woodworth,* 13 How. 363; *Dunlop* v. *Peter,* 1 Cr. C. C. 403; *Foshay* v. *Ferguson,* 5 Hill, 154; *Hall* v. *Weare,* 92 U. S. 728; *Harris* v. *Carmody,* 131 Mass. 51; *Haynes* v. *Rudd,* 30 Hun. 239, 83 N. Y. 253; *Hines* v. *Board, etc.* 93 Ind. 266; *Kerr* v. *Force,* 3 Cr. C. C. 8; *Lancaster* v. *Collins,* 115 U. S. 222; *Mattox* v. *United States,* 156 U. S. 237; *Miller* v. *Miller,* 68 Pa. 486; *Morse* v. *Woodworth,* 155 Mass. 233; *Murray* v. *Mason,* 1 H. & H. 120; *O'Toole* v. *Lamson,* 41 App. D. C. 276, 285; *Overby* v. *Gordon,* 13 App. D. C. 392, 406; *Richardson* v. *Duncan,* 3 N. H. 508; *Rose* v. *Owen,* 42 Ind. App. 137; *Salvador* v. *Fealey,* 105 Ia. 478, 75 N. W. 476; *Ubhoff* v. *Brandenburg,* 26 App. D. C. 3; *United States* v. *Huckabee,* 16 Wall. 414; *Walbridge* v. *Arnold,* 21 Conn. 424; *Wood* v. *Graves,* 144 Mass. 365.

Mr. Justice ROBB delivered the opinion of the Court:

The view we have taken of the case renders it unnecessary to consider the various exceptions taken during the course of the trial.

Marriage is not only the most important relation in life, but has more to do with the morals and civilization of the people than any other institution. It is a relation which, once entered into, may not be changed without the express sanction of the law. "Other contracts may be modified, restricted, or enlarged, or entirely released upon the consent of the parties. Not so with marriage. The relation once formed, the law steps in and holds the parties to various obligations and liabilities. It is an institution, in the maintenance of which in its purity the

public is deeply interested, for it is the foundation of the family and of society, without which there would be neither civilization nor progress." *Maynard* v. *Hill,* 125 U. S. 190, 211, 31 L. ed. 654, 659, 8 Sup. Ct. Rep. 723. Agreements between husband and wife having for their object the procurement of a divorce are frowned upon by the courts, for the reason that good faith is demanded of the parties to a divorce proceeding, to the end that the court may be fully advised as to the facts. *Cronan* v. *Cronan,* present term, *ante,* p. 343. In that case this court declared that it would not lend its aid in the enforcement of a contract between husband and wife if· it appeared that such contract was induced by a promise by one party to procure a divorce from the other. Obviously, if the facts alleged in the proposed bill for the annulment of the divorce decree are true, a far greater fraud was practised upon the court here, and it was counsel's duty to file the bill. We must assume that the averments of the bill were made in good faith, and that counsel for appellant had reasonable cause to believe them true. And yet, instead of filing the bill, counsel representing this unfortunate woman entered into the agreement in question, whereby a decree of divorce alleged to have been obtained upon false testimony and through fraud was permitted to stand. It results that this woman continues to bear the brand of an adulteress, her legal right to be cared for and supported by her husband has been stricken down, and an attempt has been made to bargain away the dignity and authority of the court.

Appellee testified that he signed this agreement to prevent the filing of the said bill, and the agreement provides that "so long as said sums are promptly paid, no action shall be taken in the premises by the said Erminie L. Winter or her counsel against the said Mahlon A. Winter, looking either *to disturbing said decree* or seeking any additional sums." It is beyond controversy, therefore, that the agreement we are asked to recognize and enforce contemplated and required the suppression of evidence of collusion and fraud practised in a court of justice. To sustain and give effect to such an agreement it would

be necessary for justice to be halt as well as blind. It matters not that counsel for Mrs. Winter thought they were acting for her best interests, since the result is exactly the same; namely, the recognition of an alleged fraudulent decree of divorce under an agreement to withhold knowledge of the fraud from the court. Such an agreement is violative of every rule of public policy and will not be recognized.

The judgment must be affirmed with costs.          *Affirmed.*